IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


| | | |
|---|---|---|
| SIMPLEVILLE MUSIC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:04cv393-MHT |
| | ) | (WO) |
| H. JACK MIZELL, | ) | |
| | ) | |
| Defendant. | ) | |


OPINION

The plaintiffs are members of the American Society of

Composers, Authors and Publishers ("ASCAP"), to which they

have granted a non-exclusive right to license public

performances of their copyrighted musical compositions.[1]

The plaintiffs brought this lawsuit against defendant H.

Jack Mizell, charging that he violated the Copyright Act,

_____

        1.   The plaintiffs are Simpleville Music; New Hidden
Valley  Music  Co.;  BMG  Songs,  Inc.;  Famous  Music
Corporation; Sony/ATV Tunes LLC; WB Music Corp.; Lanny
Wolfe  Music  Company;  Integrity  Music,  Inc.  d/b/a
Integrity's  Hosanna  Music;  Lensongs  Publishing;
Universal-MCA Music Publishing, a Division of Universal
Studios, Inc.; Doors Music Company; Hulex Music/WB Music
Corp.; J. Albert & Son (USA) Inc.; and Pure Songs and
Frank Music Corp.

17 U.S.C. § 101-1332, by playing ASCAP's copyrighted musical compositions on the radio without authorization. This court has jurisdiction under 28 U.S.C. § 1338(a) (copyright) and § 1331 (federal question).  Currently before the court is the plaintiffs' motion for summary judgment.  The motion will be granted for the reasons that follow.

### I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper.  Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56).   The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings.   Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine whether a genuine issue exists for trial.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II.   FACTS

Mizell is the owner of Shelley Broadcasting, Inc. and Stage Door Development, Inc., and these two companies, in

3

turn, operate radio stations WGEA and WRJM-FM, respectively. On September 20 and 21, 2003, WGEA broadcasted seven of the plaintiffs' ASCAP copyrighted compositions, and, on September 21 and 22, WRJM-FM broadcasted an additional eight. Neither station had ASCAP's permission to perform these compositions.

The 15 broadcasted songs are "I Can Only Imagine," "Any Day Now," "Stranger In My House," "Walking In Memphis," "Lovin' All Night," "Maybe God Is Tryin' To Tell You Somethin'," "His Hand In Mine," "More Than Wonderful," "Above All," "Love Is Alive," "L.A. Woman," "Hip To Be Square," "Highway To Hell," "Smokin'," and "Luck Be A Lady Tonight."


### III. DISCUSSION

To establish a prima-facie copyright infringement case for a musical composition, a plaintiff may prove (1) ownership of a valid copyright and (2) "public performance" of the copyrighted work without

4

authorization.   17 U.S.C. § 106(4) (subject to other provisions in the Copyright Act that provide that certain uses of copyrighted materials are not infringements despite § 106, "the owner of copyright ... has the exclusive rights ... in the case of ... musical ... works ... to perform the copyrighted work publicly"); <u>cf.</u> <u>Feist Publications, Inc. v. Rural Telephone Service Co., Inc</u>. 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."); <u>A & M Records v. Napster, Inc.</u>, 239 F.3d 1004, 1013 (9th Cir. 2001) ("Plaintiffs must satisfy two requirements to present a prima facie case of direct infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.").

The plaintiffs have satisfied the first element by submitting copies of the copyright registration certificates.  See 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").

With regard to the second element, the plaintiffs have presented the affidavits of Jerry Glaze, who recorded the broadcasts of radio stations WGEA and WRJM-FM on the days in dispute, and Alex Kuzyszyn, who listened to the tapes and identified that the 15 compositions constituting the basis of this suit were found on the tape recordings.  The evidence supplied by Mizell either admits that these compositions were broadcast on radio stations WGEA and WRJM-FM or concedes that they may have been played.  And the law is settled that a radio broadcast constitutes a "performance" within the meaning and coverage of copyright

6

law.  <u>Twentieth Century Music Corp. v. Aiken</u>, 422 U.S. 151, 161 (1975) ("Broadcasters perform."); 2 Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> § 8.14[B][1] (2006) ("the act of broadcasting a work is itself a performance of that work"); <u>see also</u> 17 U.S.C. § 101 ("To 'perform' a work means to recite ... it, either directly or by means of any device or process ....").  Mizell also admits that he did not have permission from the plaintiffs or ASCAP to broadcast the 15 songs.

However, Mizell asserts an array of defenses to the copyright claims.  He argues that there was no infringement because (1) the compositions were played from promotional CDs; (2) the compositions were played as incidental, background, or bumper music;[2] (3) the composition performers were not ASCAP members; (4) the compositions fall within the religious exemption to

_____

2.  "Bumper music ... refers to the short clips of music used to buffer transitions between programming elements, such as when a syndicated program takes a break for local station identification or 'goes to commercial.'" http://en.wikipedia.org/wiki/Bumper_music.

copyright laws; (5) he did not intend to violate copyright laws; and (6) he did not personally control the content of the broadcasts.  Mizell also requests a jury trial so that it may determine the appropriate amount of statutory damages.  The court will discuss the validity of each defense.

### 1. Promotional CDs

Mizell contends that he could play the songs without permission because they came off promotional CDs. According to him, his stations have had a policy of playing only promotional, royalty-free music since 1991, and the ASCAP songs he played came from free CDs the radio stations received, royalty-free, from either Compact Disc Xpress (CDX) or Crossroads.[3] Promotional CDs are CDs that are distributed for free and for which the writer and publisher will not collect royalties.  6 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 30.02 (2006).

_____

3.    Def. Supplemental Reply Memorandum (Doc. No. 74), Mizell Affidavit, p.1.

8

However, the fact that a copyright holder grants recording companies the right to make and distribute promotional copies of their songs does not mean that it waives its right to collect fees when a radio station wishes to broadcast publically from the promotional copy. Chappell & Co. v. Middletown Farmers Market & Auction Co., 334 F.2d 303, 305 (3rd Cir. 1964) ("The surrender of one monopoly--the right to make mechanical reproductions--does not carry with it the right to publicly perform the copyrighted musical composition.").

Moreover, while Mizell provides multiple examples of music subscription services that pay the licensing fees for the subscriber,[4] none of these examples includes CDX or Crossroads, the two publishers of the CDs Mizell contends are promotional.  In fact, the copies of the CD

_____

4.  Mizell's radio stations currently have an agreement with TM Century® to use their Imagio™ MegaMusic production libraries, which provide production music beds of 60 seconds or less duration, and various sound effects and combinations of sound effects.  The radio stations also use Premier Radio Network's Plug and Play Imaging service which contains pre-produced promos and liners for radio stations along with edited hit music bumpers.

9

sleeves that accompanied the CDX CDs include the following cautionary language: "NOT FOR SALE: for promotional use only.   Warning all rights reserved.   Unauthorized duplication is a violation of applicable law."[5]

It is apparent that Mizell is using the term "promotional" out of context.   The language on the CD sleeve defines the terms of its free, but restricted, transfer.   The CD itself is promotional, its licensing for public performance is not.   A radio station that receives a CD labeled "for promotional use only," which means that the station did not have to pay for the CD, must still obtain permission before broadcasting its contents.   See Chappell, 334 F.2d at 305.

Mizell's promotional-CD defense is meritless.


## 2. Incidental or Background Use

Mizell used several ASCAP songs as background or bumper music.   He asserts that, because ASCAP does not pay

---

5.   Def. Reply in Opposition to Summary Judgment (Doc. No. 60), Parker Affidavit, Exhibit 1-A.

10

royalties to its members for background, bumper, or other incidental uses, he may use those songs as such without paying any licensing fees.

Background music is not exempt from being subject to licensing fees.  See Schumann v. Albuquerque Corp., 664 F. Supp. 473, 477 (D.N. M. 1987) (Bratton, J.) ("The fact that the song might have been used as background to a community calendar does not render its performance fair use under § 107."). Additionally, courts do allow incidental use fees.  See United States v. American Socy. of Composers, 981 F. Supp. 199 (S.D. N.Y. 1997) (Conner, J.) (ASCAP's incidental use fee of 0.06% is reasonable). Mizell's background-use defense is meritless.

### 3. Non-ASCAP Performers

Mizell argues that the plaintiffs cannot claim copyright infringement when the performers of the offending compositions are not ASCAP members.

The copyright owner has an interest in the composition itself, regardless of the performer.  17 U.S.C. § 501(b).  "The legal or beneficial <u>owner</u> of an exclusive right under a copyright is entitled, subject to the requirements of [17 U.S.C. §] 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it."  <u>Id</u>. (emphasis added)).  Mizell's non-ASCAP-performer defense is meritless.

### 4. Religious Exemption

Mizell argues that the 'religious exemption' allowed him to broadcast some of the copyrighted compositions because they were performed during church services.  17 U.S.C. § 110(3) creates an exemption to copyright-law requirements for the "performance of a nondramatic literary or musical work or of a dramatico-musical work of a religious nature, or display of a work, in the course of services at a place of worship or other religious assembly."

The critical language here is "at a place of worship
or other religious assembly"; the exception says nothing
about broadcasts in general and, more specifically,
broadcasts from a place of worship.  True, it could be
argued the exemption should apply where, although the
songs are being broadcast, there is an audience at the
place of worship; in short, the exemption, it could be
argued, should apply because the conditions to the
exemption have been satisfied.  Thus, it also could be
argued, the exemption should apply to all simultaneous
performances as long as one of the performances falls
within the exemption.

However, the law is clear that radio broadcasting is
itself a separate public performance which can constitute
an infringement.  Twentieth Century Music Corp. v. Aiken,
422 U.S. 151, 161 (1975) ("Broadcasters perform."); 2
Melville B. Nimmer & David Nimmer, Nimmer on Copyright
§ 8.14[B][1] (2006) ("the act of broadcasting a work is
itself a performance of that work"); see also 17 U.S.C.

13

§ 101 ("To 'perform' a work means to recite ... it, either directly or by means of any device or process ...."). Thus, the mere fact that a radio broadcast of a song is simultaneous with the playing of the song at a place of worship does not mean that broadcast falls within the religious exemption; playing to the audience at the place of worship and playing to a broadcast audience are separate public performances. See H.R. Rep. No. 94-1476, at 55 (1976) ("[A] singer is performing when he or she sings a song; a broadcasting network is performing when it transmits his or her performance ...; a local broadcaster is performing when it transmits the network broadcast; a cable television system is performing when it retransmits the broadcast to its subscribers...."); see also, Schumann v. Albuquerque Corp., 664 F.Supp. 473, 475 (D. N.M. 1987) (Bratton, J.) (radio broadcast is a separate performance from live performance).

This understanding of the religious exemption is supported by its legislative history, which provides that

14

the exemption does "not extend to religious broadcasts or other transmissions to the public at large, even where the transmissions were sent from the place of worship."  H. Rep. No. 94-1476, at 84, <u>reprinted in</u> 1976 U.S.C.C.A.N at 5698-99.

Accordingly, the court concludes that the religious exemption does not allow Mizell to broadcast copyrighted songs, performed during church services, without authorization, for such broadcasts are not "at a place of worship".  <u>Id</u>.  Mizell's religious-exemption defense is meritless.

### 5. Lack of Intent

Mizell protests that he did not intend to play copyrighted material and took measures to protect against such infringements.  However, "intention to infringe is not essential under the [Copyright] Act." <u>Buck v. Jewell-LaSalle Realty Co.</u>, 283 U.S. 191, 198 (1931).  <u>See U.S. Songs, Inc. v. Downside Lenox, Inc.</u>, 771 F. Supp.

1220, 1228 (N.D. Ga. 1991) (Hall, J.) ("[T]he law is clear that lack of intent to infringe does not shield the infringer from liability."); 4 Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> § 13.08 (2006) ("In actions for statutory copyright infringement, the innocent intent of the defendant will not constitute a defense to a finding of liability.").

Admittedly, five of the songs in this case were broadcast during syndicated radio shows, while one song was broadcast as part of a national television commercial. Nevertheless, "a broadcaster who is aware of his obligations under copyright law remains responsible for ensuring that copyrighted music is not aired without permission." <u>Jobete Music Co., Inc. v. Johnson Communications, Inc.</u>, 285 F.Supp.2d 1077, 1089 (S.D. Ohio 2003) (Rice, C.J.) (where defendant was liable for copyright infringement for airing an NBC commercial that played "This Will Be (An Everlasting Love)" in the background without permission). Although Mizell did not

16

produce the commercial or the radio shows himself, he was still responsible for ensuring that all of the licensing fees were paid.  Consequently, Mizell's no-intent defense is meritless.

### 6. Personal Participation in Infringement

Mizell denies liability on the ground that he did not personally participate in the infringement.  However, as the president, owner, and sole stockholder of the companies that own WGEA and WRJM-FM, he is liable for any infringement occurring at the stations.  A person "including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement." Southern Bell. Tel. & Tel. Co. v. Associated Tel. Directory Publishers, Inc., 756 F.2d 801, 811 (11th Cir. 1985) (citation omitted); see also Chi-Boy Music v. Towne Tavern, Inc., 779 F. Supp. 527, 530 (N.D. Ala. 1991)

17

(Hancock, J.).   Similarly, "under the Copyright Act, an individual who is the dominant influence in a corporation, and through his position can control the acts of that corporation, may be held jointly and severally liable with the corporate entity for copyright infringements, even in the absence of the individual's actual knowledge of the infringements." Quartet Music v. Kissimmee Broadcasting, Inc., 795 F. Supp. 1100, 1103 (M.D. Fl. 1992) (Kellam, J.).   The record is clear that Mizell fits the bill of being the supervising, dominant figure at the two radio stations.

Mizell's no-personal-participation defense is meritless.

## 7. Judge or Jury Trial

Mizell demands a jury on damages.   17 U.S.C. § 504(c) explains that "an infringer of copyright is liable for either--(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by

subsection (b); or (2) statutory damages, as provided by subsection (c)." Subsection (c) further details that a "copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages ... with respect to any one work ... of not less than $ 750 or more than $ 30,000 as the court considers just."

Although the statute itself does not require a jury trial, the Supreme Court has held that "the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself." Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 355 (1998).

The plaintiffs argue that a jury trial is unnecessary because they will accept the minimum statutory award of $ 750 per violation. "Feltner ... establish[ed] ... that cases under § 504(c) are normal civil actions subject to the normal allocation of functions between judge and

19

jury." <u>BMG Music v. Gonzalez</u>, 430 F.3d 888, 892 (7th Cir. 2005), <u>cert. denied</u>, 126 S.Ct. 2032 (2006). "When there is a material dispute of fact to be resolved or discretion to be exercised in selecting a financial award, then either side is entitled to a jury; if there is no material dispute and a rule of law eliminates discretion in selecting the remedy, then summary judgment is permissible." <u>Id</u>. at 892-893.

Here, because the plaintiffs are seeking the statutory minimum and because the plaintiffs are asserting only one violation per song and because the record establishes as a matter of law that the violations occurred, the law has eliminated any discretion as to damages, and summary judgment is appropriate. <u>See</u> <u>id</u>. (holding that, because there were no disputed facts as to the statutory minimum award, summary judgment was proper as to damages); <u>Lava Records, LLC v. Ates</u>, No. Civ.A.05-1314, 2006 WL 1914166, at *3 (W.D. La. July 11, 2006) (James, J.) (finding that because the plaintiffs sought only the minimum statutory

20

amount and courts have routinely held that an award of $ 750.00 per work is appropriately awarded by summary judgment, there was no need for jury trial on the issue of damages); <u>Capitol    Records    v.    Lyons</u>,    No. Civ.A.3:03-CV-2018-L., 2004 WL 1732324, at *3 (N.D. Tex. Aug. 2, 2004) (Ramirez, Mag. J.) (finding that no hearing was necessary prior to an award of the minimum $ 750.00 per work where defendant defaulted and his acts of infringement were deemed admitted).

In short, because there is nothing for a jury to decide here as to damages, a jury is unnecessary.

## 8.  Injunctive Relief

The plaintiffs request that the court permanently enjoin Mizell from publicly performing the 15 songs. While the court may grant a permanent injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright," 17 U.S.C. § 502(a), that grant is not unlimited; the court may, as a general

21

matter, do so only when there is a substantial likelihood
of further infringement of a plaintiff's copyrights.  4
Melville B. Nimmer & David Nimmer, Nimmer on Copyright §
14-06[B] (2006); see also  U.S. Songs, Inc. v. Downside
Lenox, Inc., 771 F. Supp. 1220, 1229 (N.D. Ga. 1991)
(Hall, J.).

The record, on the plaintiffs' summary-judgment
motion, is unclear whether Mizell's failure to honor the
plaintiffs' copyrights was in good or bad faith.  The
court therefore believes that the prudent course to follow
is to have an evidentiary hearing specifically addressing
whether injunctive relief is needed and, if so, what form
that relief should take.  Of course, this assumes that
the plaintiffs still want such relief in the wake of the
final judgment entered today.  Therefore, the plaintiffs
will have seven days from the date of this opinion to
inform the court in writing if they want such relief, and,
if they do, the court will set the matter down for an
evidentiary hearing.  If the plaintiffs fail to make this

22

request within the time allowed, the court will assume
that they have abandoned such relief.


### IV.  CONCLUSION

Because the plaintiffs have proven each of the
elements of copyright infringement as to each of the 15
songs, and because Mizell has failed to offer valid
defenses, an appropriate summary judgment in favor of the
plaintiffs will be entered.  The assessment will be the
minimum statutory fee of $ 750 for each of the 15
infringements, for a total of $ 11,250 (15 x $ 750 =
$ 11,250).

DONE, this the 14th day of September, 2006.


                        /s/ Myron H. Thompson
                    UNITED STATES DISTRICT JUDGE