IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


SIMPLEVILLE MUSIC, et al., )
                           )
     Plaintiffs,           )
                           )    CIVIL ACTION NO.
     v.                    )    1:04cv393-MHT
                           )        (WO)
H. JACK MIZELL,            )
                           )
     Defendant.            )


## OPINION AND ORDER

The plaintiffs (who are members of the American Society of Composers, Authors and Publishers ("ASCAP") to which they have granted a non-exclusive right to license public performances of their copyrighted musical compositions) brought this lawsuit against defendant H. Jack Mizell, charging that he violated the Copyright Act, 17 U.S.C. §§ 101-1332, by playing ASCAP's copyrighted musical compositions on the radio without authorization. This court entered summary judgment in favor of the plaintiffs and held that Mizell did, in fact, violate the Copyright Act when he broadcasted the plaintiffs' songs

without prior authorization.  Simpleville Music v. Mizell,
451 F. Supp. 2d 1293 (M.D. Ala. 2006) (Thompson, J.).

This cause is now before the court on the plaintiffs'
motion for attorneys' fees and expenses.  The plaintiffs'
motion will be granted to the extent that, of the total
request of $ 91,060.56, the court will award $ 56,175.00
in fees and $ 6,826.24 in expenses, for a total of
$ 63,001.24.


## I.  APPELLATE FEES AND EXPENSES

The Copyright Act provides that the court in its
discretion may award costs and attorney's fees to the
prevailing party.  17 U.S.C. § 505; see also Fogerty v.
Fantasy, Inc., 510 U.S. 517, 534 (1994).  A portion of the
fees requested by the plaintiffs, $ 8,902.70, is for work
done in connection with Mizell's appeal of this case.
Although § 505 of the Copyright Act allows the prevailing
party attorney's fees and expenses for services rendered
on appeal, 4-14 Melville B. Nimmer & David Nimmer, Nimmer

2

on Copyright § 14.10[E] (2006) ("An award of attorney's fees may be made for services rendered on appeal as well as at the trial level."), a district court is not authorized to award fees and expenses for appellate work. Davidson v. City of Avon Park, 848 F.2d 172, 173 (11th Cir. 1988) ("As to fees for services on appeal, we hold that the district court is not authorized ... to control the filing time or assessment of attorney's fees for services rendered on appeal."); Wyatt v. Sawyer, 67 F. Supp. 2d 1331, 1346-1347 (M.D. Ala. 1999) (Thompson, J.) ("a district court is not authorized to award fees and expenses for appellate work"). Instead, "If a party wishes to obtain fees on appeal, he or she must file a petition with the clerk of [the Eleventh Circuit] within fourteen days of the issuance of the opinion of [that] court." Mills v. Freeman, 118 F.3d 727, 734 (11th Cir. 1997).[1]   Consequently, the plaintiffs' request for

_____

1. Although these cases deal with 42 U.S.C. § 1988 and not § 505 of the Copyright Act, the fee-shifting language is virtually identical.   Compare 42 U.S.C. (continued...)

3

attorneys' fees and expenses in connection with Mizell's appeal in the amount of $ 8,902.70 is denied.

## II.   TRIAL FEES AND EXPENSES

The remaining fees and expenses total $ 82,157.86. The plaintiffs contend that they are entitled to their attorneys' fees and expenses because they have prevailed on all of the claims asserted in their motion for summary judgment, and thus they are 'prevailing parties' for purposes of a fee award.   "Section 505 of the 1976 Copyright Act, 17 U.S.C. § 505, permits the trial court in its discretion to award a reasonable attorney's fee to the

---

1.   (...continued)
§ 1988 ("In any action or proceeding to enforce a provision of [enumerated] sections ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs") with 17 U.S.C. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs").  Therefore, § 1988 and § 505 are generally governed by the same legal principles.

4

prevailing party in a copyright infringement action."
Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684
F.2d 821, 832 (11th Cir. 1982).

The starting point in setting any fee award for an
attorney is determining the "lodestar" figure--that is,
the product of the number of hours reasonably expended to
prosecute the lawsuit and the reasonable hourly rate for
work performed by similarly situated attorneys in the
community.  Norman v. Housing Auth. of Montgomery, 836
F.2d 1292, 1299 (11th Cir. 1988).  After calculating the
lodestar fee, the court should then proceed with an
analysis of whether any portion of this fee should be
adjusted upwards or downwards. Pennsylvania v. Del. Valley
Citizens' Council for Clean Air, 478 U.S. 546, 565-66
(1986).

In determining the lodestar figure and whether it
should be adjusted upwards or downwards, the court is
guided by the 12 factors set out in Johnson v. Georgia
Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.

5

1974);[2] <u>see also</u> <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 91-92
(1989).   These factors are: (1) the time and labor
required; (2) the novelty and difficulty of the questions;
(3) the skill required to perform the legal services
properly; (4) the preclusion of other employment by the
attorney due to acceptance of the case; (5) the customary
fee in the community; (6) whether the fee is fixed or
contingent; (7) time limitations imposed by the client or
circumstances; (8) the amount involved and the results
obtained; (9) the experience, reputation, and ability of
the attorneys; (10) the "undesirability" of the case; (11)
the nature and length of the professional relationship
with the client; and (12) awards in similar cases.
<u>Johnson</u>, 488 F.2d at 717-19.

The fee applicant bears the burden of "establishing
entitlement and documenting the appropriate hours and

_____

2.   In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206,
1209 (11th Cir. 1981) (en banc), the Eleventh Circuit
adopted as binding precedent all of the decisions of the
former Fifth Circuit handed down prior to the close of
business on September 30, 1981.

hourly rates." Id. at 1303. This burden includes supplying the court with specific and detailed evidence from which it can determine the reasonable hourly rate; maintaining records to show the time spent on the different claims; and setting out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity. ACLU v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). "A well-prepared fee petition also would include a summary, grouping time entries by the nature of the activity or state of the case." Id. (citation omitted).

A fee applicant should also exercise "billing judgment," id. at 428 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)), that is, the applicant should "exclude from his fee applications 'excessive, redundant, or otherwise unnecessary [hours],' which are hours 'that would be unreasonable to bill to a client and therefore to

one's adversary irrespective of the skill, reputation, or experience of counsel.'" <u>Id</u>. (citation omitted).

"Those opposing fee applications have obligations, too.  In order for [district] courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'"  <u>Id</u>. (citation omitted).  While Mizell has challenged the plaintiffs' fee request as "patently and clearly excessive," Mizell Resp. Atty. Fees. ¶ 1, he has not identified what hours and rates are improper; he has, in short, offered nothing to help the court in its assessment of the plaintiffs' request.  Nevertheless, despite this failing on Mizell's part, the court will use its judgment to decide whether to award attorneys' fees and expenses to the plaintiffs in the amount requested.

A.   REASONABLE RATES

To determine whether the hourly rate submitted by the plaintiffs' attorneys is reasonable, the court will consider the customary fee and market rate for the attorneys, in addition to their experience, skill and reputation.  See Johnson, 488 F.2d at 718; Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988) ("A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.").  The plaintiffs' counsel seek the following hourly rates:

| Attorneys | 2004 Hourly Rate | 2005 Hourly Rate | 2006 Hourly Rate |
|---|---|---|---|
| James W. Gewin | $ 365 | $ 390 | $ 415 |
| Dylan C. Black | $ 210 | $ 235 | $ 255 |
| Bradley S. Burleson | n/a | n/a | $ 175 |

| Legal Assistants | 2004 Hourly Rate | 2005 Hourly Rate | 2006 Hourly Rate |
|---|---|---|---|
| Terry J. Kelley | n/a | n/a | $ 155 |
| Cindy Seay | n/a | n/a | $140 |
| Joshua A. Andrews | n/a | $ 95 | n/a |
| Cheryl H. Thompson | $ 75 | $ 80 | $ 90 |

The plaintiffs defend their request on several grounds. First, they argue that the hourly rates charged in this case are the same rates charged in other ASCAP cases handled by counsel's firm. Specifically, they contend that "[w]hat [they] charge[] clients is powerful, and perhaps the best, evidence of [their] market rate," Dillard v. City of Greensboro, 213 F.3d 1347, 1354-55 (11th Cir. 2000), and that the plaintiffs' counsel actually billed ASCAP, and ASCAP has already paid, the amount requested for their work in this matter. The plaintiffs also point to Gewin's extensive experience in litigating copyright cases as ASCAP's legal counsel since 1970 and Black's experience as a copyright litigator to explain that they used such high-priced attorneys in an

10

effort to reduce the number of hours required to litigate this matter.   They   submitted   affidavits   from   two Montgomery   attorneys   who   attest   that   based   on   the difficulties   inherent   in   copyright   cases,   Gewin's   and Black's   skills   and   experience,   and   the   requirements   of this particular case, their requested rates are reasonable and appropriate.

The   court   has   considered   the   plaintiffs'   evidence demonstrating   the   experience,   reputation   and   ability   of its attorneys.   The court also appreciates the experience required to represent plaintiffs in copyright cases, and the public policy concerns that inform the setting of attorney's   fees   in   these   cases.   However,   the   court's determination of attorney's fees must also be guided by the prevailing market rate, which, in this case, is that of Montgomery, Alabama.   See Black v. M.G.A., Inc., 51 F.Supp.2d 1315, 1320-21 (M.D. Ala. 1999) (Thompson, J.) ("'The rate of attorney's fees is that of the place where the case is filed.'") (quoting Cullens v. Georgia Dep't of

Transp., 29 F.3d 1489, 1494 (11th Cir. 1994)).  The only

evidence in the record of Alabama's market rate for

attorney's fees comes from the affidavit submitted by

Robert D. Segall, where he states

> "the customary range of hourly rates
> for lawyers of [Gewin's] skill and
> experience range between $ 300 and
> $ 375.  Litigators in Montgomery with
> approximately 10 years' experience
> customarily charge hourly rates
> between $ 200 and $ 250 for complex
> business litigation.  Litigators in
> Montgomery with 1-2 years of
> experience customarily charge hourly
> rates between $ 160 and $ 185 for
> complex business litigation."

Segall Aff. ¶5.[3]  Based on Segall's affidavit testimony,

the court believes that the applicable range for Gewin is

$ 300 to $ 375, the applicable range for Black is $ 200 to

$ 250 based on his 10 years of experience, and the

---

        3. Segall continues by saying that "given the
relatively few litigators in Montgomery who regularly
practice in the area of copyright infringement, and given
the evident expertise in this specialized area of law
demonstrated by Plaintiff's counsel, and given the fact
that Mr. Gewin especially is one of the top lawyers in
the entire state ... " it is his opinion that the rates
charged in this case are reasonable.  Segall Aff. ¶6.

12

applicable range for Burleson is $ 160 to $ 185 based on his one to two years of experience.  Although the rates billed by Gewin, Black, and Burleson may be their usual billable rates as evidenced by the fact that ASCAP has already paid them at those rates, the court will limit their rates to what is reasonable in the Montgomery market.

Consequently, the court finds that an appropriate rate is $ 300 per hour for Gewin, $ 200 per hour for Black, and $ 160 per hour for Burleson, which all fall within the range provided by Segall. The court will also discount the requested hourly rates for Kelley, Seay, Andrews, and Thompson as indicated in the tables below.

| Attorneys | Hourly Rate |
|---|---|
| James W. Gewin | $ 300 |
| Dylan C. Black | $ 200 |
| Bradley S. Burleson | $ 160 |

13

| Legal Assistants | Hourly Rate |
|------------------|-------------|
| Terry J. Kelley | $ 100 |
| Cindy Seay | $ 100 |
| Joshua A. Andrews | $ 95 |
| Cheryl H. Thompson | $ 80 |

## B.   REASONABLE HOURS

In calculating the reasonable hours, the court considers the time and labor required to litigate this case and the experience and ability of the attorneys. See Johnson, 488 F.2d at 718.   The plaintiffs' attorneys submit that they worked on this case for a total of 288.25 hours.   They worked 254.25 hours up until this court's summary-judgment ruling in their favor.   This case stretched for over two years, all the way until the eve of trial.   Additionally, Mizell forced the plaintiffs to litigate every issue in their complaint because he was unwilling to concede any points, no matter how non-meritorious.   In the exercise of billing judgment, the plaintiffs also state that they are not seeking

14

reimbursement for the time and expenses incurred by ASCAP's in-house counsel on this case, which would greatly increase the number of hours expended.

In light of the length of time this litigation has endured, and the fact that the plaintiffs' counsel prepared the case fully for trial, the 254.25 total hours spent by the plaintiffs' counsel prior to this court's summary-judgment ruling are reasonable.

The remaining 34 hours included in the plaintiffs' first supplemental brief for attorneys' fees was spent after the court's ruling. These hours included the time spent on post-judgment matters and the plaintiffs' multiple briefs and evidence for attorneys' fees. Based on the extensive experience that counsel for the plaintiffs have in litigating copyright-infringement cases, 34 hours to prepare a motion for attorneys' fees seem excessive. Therefore, the court will reduce the hours submitted in the plaintiffs' first supplemental brief for attorneys' fees to 17 hours.

15

In conclusion, the court will award 254.25 hours pre-summary judgment and 17 hours post-summary judgment, for a total of 271.25 hours.

### C. LODESTAR CALCULATIONS

The court is of the opinion, based on the <u>Johnson</u> criteria, that the lodestars will be calculated as follows:

|  | Time | Rate | Total |
|---|---|---|---|
| James W. Gewin | 45.25 | $ 300.00 | $ 13,575.00 |
| Dylan C. Black | 190.50 | 200.00 | 38,100.00 |
| Bradley S. Burleson | 19.25 | 160.00 | 3,080.00 |
| Terry J. Kelley | 0.25 | 100.00 | 25.00 |
| Cindy Seay | 5.00 | 100.00 | 500.00 |
| Joshua A. Andrews | 1.00 | 95.00 | 95.00 |
| Cheryl H. Thompson | 10.00 | 80.00 | 800.00 |
| Total | 271.25 |  | $ 56,175.00 |

Applying the <u>Johnson</u> factors, the court also does not find an upward or downward adjustment appropriate in this case.   For example, the skill required to perform the legal services properly, <u>Johnson</u>, 488 F.2d at 718,  was

16

adequately reflected in the plaintiffs' counsels' hourly rates.  Additionally, three of the <u>Johnson</u> factors were inapplicable in this case: This case was not based on a contingency fee arrangement, and there was no evidence of time limitations, that the plaintiffs' attorneys were precluded from accepting other employment, or that the case was undesirable.  <u>Id</u>. at 717-19.

The court recognizes, however, that under the eighth <u>Johnson</u> factor (the amount of relief involved and the results obtained, <u>Johnson</u>, 488 F.2d at 718), the amount of attorneys' fees and expenses the plaintiffs are seeking may seem large compared to the statutory-damages award of $ 11,250.  However, the fee-shifting provision of § 505 of the Copyright Act was created to encourage copyright owners to bring lawsuits in instances where the recovery may fall well below the expense to bring such a suit.  <u>See</u> <u>Little Mole Music v. Bengimina</u>, 720 F. Supp. 751, 757 (W.D. Mo. 1989) (Stevens, J.) (noting that "often the actual value of the recovery in copyright infringement

17

actions may not be commensurate with the attorneys' fees incurred to obtain the recovery" and "[w]ithout the fee shifting provision, copyright owners would doubtless be exceedingly reluctant to enforce their rights in such cases"); 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.10 (2006) ("The rationale for an award of attorney's fees has been summarized as follows: 'An award of attorney's fees ... prevents copyright infringements from going unchallenged where the commercial value of the infringed work is small and there is no economic incentive to challenge an infringement through expensive litigation.'") (quoting Quinto v. Legal Times of Wash., Inc., 511 F. Supp. 579, 581 (D.D.C. 1981)).

Therefore, it is not unreasonable for a fee award to be higher than the statutory-damages amount. See, e.g., Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 853 (11th Cir. 1990) (upholding a district court's award of $ 451,789.06 in fees for a $ 130,000 damages award); Little Mole Music, 720 F. Supp.

18

at 757 ("it is well-established that a fee award need not
be equal or less than the statutory damages amount");
International Korwin Corp. v. Kowalczyk, 855 F.2d 375 (7th
Cir. 1988) (upholding a $ 21,502.75 fee award and a
$ 10,500 statutory damages award); Broadcast Music, Inc.
v. Behulak, 651 F. Supp. 57 (M.D. Fla. 1986) (Fawsett, J.)
($ 41,887.50 in attorneys' fees and only $ 12,000 awarded
in statutory damages).  The award for attorneys fees in
this case is also in line with awards in similar cases.
See id.

The high fee award is particularly reasonable in this
case, where the plaintiffs, clearly in an effort to
curtail litigation and its cost, accepted the statutory
minimum of $ 750 per violation.  Had they sought the
maximum statutory award of $ 30,000 per infringement, they
could have been awarded as much as $ 450,000 in statutory
damages.

Finally, it cannot be overlooked that Mizell (acting
both with and without an legal representation) fought

19

this case aggressively, often pursuing defenses that
clearly lacked merit and often requiring the plaintiffs to
prove points that were clearly undisputed.  He, in short,
brought this hefty fee bill on himself.


## IV. EXPENSES

The plaintiffs also seek expenses incurred from this
litigation in the amount of $ 6,826.24.  With the
exception of overhead-office expenses normally absorbed by
the attorney, all reasonable expenses incurred in case
preparation, during the course of litigation or as an
aspect of settlement of the case, may be taxed as costs;
the standard of reasonableness is to be given a liberal
interpretation.  NAACP v. City of Evergreen, 812 F.2d
1332, 1337 (11th Cir. 1987); Dowdell v. City of Apopka,
698 F.2d 1181, 1192 (11th Cir. 1983); Black v. M.G.A.,
Inc., 51 F. Supp. 2d 1315, 1326 (M.D. Ala. 1999)
(Thompson, J.).

20

Of the $ 6,826.24 the plaintiffs seek, $ 5,312.74 is for such things as filing fees, copying costs, postage and overnight-delivery expenses, court-reporter fees, and fees for electronic-legal research.  They also seek $ 1,513.50 incurred to obtain certified original copyright-registration certificates and assignments of copyright from the United States Copyright office.  This expense was necessary because Mizell refused to stipulate that the copies presented by the plaintiffs could be admitted at trial.  The court finds that the expenses submitted by the plaintiffs are reasonable and will award expenses totaling $  6,826.24.

## V. CONCLUSION

Accordingly, it is ORDERED that plaintiffs Simpleville Music; New Hidden Valley Music Co.; BMG Songs, Inc.; Famous Music Corporation; Sony/ATV Tunes LLC; WB Music Corp.; Lanny Wolfe Music Company; Integrity Music, Inc. d/b/a Integrity's Hosanna Music; Lensongs Publishing;

21

Universal-MCA Music Publishing, a Division of Universal Studios, Inc.; Doors Music Company; Hulex Music/WB Music Corp.; J. Albert & Son (USA) Inc.; and Pure Songs and Frank Music Corp's motion for attorneys' fees and costs (doc. no. 109), is granted to the extent that the plaintiffs shall have and recover costs in the amount of $ 6,826.24 and attorneys' fees in the amount of $ 56,175.00, for a total of $ 63,001.24, from defendant H. Jack Mizell.

DONE, this the 13th day of February, 2007.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE